## George B. Meleny, Appellee, v. Library Bureau, Appellant.

## Gen. No. 14,489.

1. INSTRUCTIONS—*when error will reverse.* An instruction is erroneous and requires reversal which is likely to mislead the jury into believing that the court had heard and remembered testimony during the trial which they had forgotten.

2. APPEALS AND ERRORS—*when error will reverse; when not.* Under the doctrine of Crane v. Hogan, 228 Ill. 340, a judgment will not be reversed unless error is affirmatively made to appear, but whenever error is shown to exist it will compel a reversal unless the record affirmatively shows that the error was not prejudicial.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. MANCHA BRUGGEMEYER, Judge, presiding. Heard in this court at the March term, 1908. Reversed and remanded. Opinion filed May 20, 1909.

ANDREW J. RYAN, for appellant.

CUSTER & CAMERON, for appellee; TIMOTHY F. MULLEN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellee's statement of this case seems to us accurate and we adopt it substantially.

Meleny, the appellee, brought this suit against the Library Bureau, an Illinois corporation, to recover a balance claimed to be due under a contract of employment for the year 1905. He served the company as general manager. His contract for that year gave him a yearly salary of $6,000 and "in addition 25 per cent of the earnings of the business after first taking out $20,000 from the profits."

The salary of $6,000 was paid from month to month, and on account of the additional compensation he collected $9,000 in stock (afterwards converted into money), leaving a balance which the parties agreed was to be paid in cash. This suit was brought to recover that balance with interest.

The dispute is over the meaning to be placed (in the light of all the evidence) on the words, "the earnings of the Library Bureau of Chicago above $20,000, for the year ending 1905," as they appear in defendant's Exhibit 7, where the Library Bureau says, by its President, in a letter to Meleny, dated December 19, 1904:

"The understanding is that we will guarantee to you an additional salary of a sum equal to 25% of the earnings of the L. B. of Chicago above $20,000 for the year ending 1905."

Meleny claims they mean the net gains or profits from the business of the Bureau of any sort, and relies upon a statement prepared by the Library Bureau's Auditor and handed to Meleny by Davidson, the President of the Library Bureau, at Boston, in February, 1907. This Auditor's statement is in evidence, and it includes the "Profits and Loss Account for year ending December 31, 1905," as follows:

"Net Profit on Sales..          7,764.85

Gain on Library
   Primes............          216.55

Inventory Profits.....        38,540.97

Fire Loss Account....        818.97

Gain on Wabash Ave-
   nue Lease..........        6,323.39

Mfg. Corporation per
   cent. Amt. Appropri-
   ated .............. 70,725.22

Less Mfg. Corpn. expns.   31,140.64

   Adm. Corpn. expns...   20,092.29

                  51,232.93        19,492.29

Pay Roll of Dec. 31, 1904,
   Chgd. in 1905 acct...        2,682.84

                                       75,839.86

Loss:
   Loss on Public libra-
      ries ............   2,109.67

   Strike Account......   2,047.94

   Depreciation of Plants  5,446.05

   Bad Debts..........     16.30        9,916.96

    Net gain on 1905 business............66,219.90"

Deducting $20,000 from the "net gain on 1905 business," leaves $46,219.90, of which 25% is $11,554.97.

Crediting on this $9,000, which Meleny received in stock (afterward converted in money), leaves $2,554.97, which is the amount for which Meleny sued in this case.

The jury to whom the issues were submitted took his view of the matter. But an item of $204.74, being 25 per cent. of the $818.97 appearing in the "Profit and Loss Account" as "Fire Loss Account," was waived by the appellee before the case went to the jury. This reduced Meleny's claim to $2,350.23, and the jury returned a verdict for that amount, plus one year's interest at 5 per cent. The interest was remitted by appellee and judgment entered for $2,350.23.

The objection made by the appellant to this amount involves these items in the Profit and Loss account:

On the credit side:

Gain on Wabash Avenue Lease...........$6,323.39

Fire Loss Account ...................... 818.97

On the debit side:

Loss on Public Libraries................. 2,109.67

As to the first of these items, it is claimed by defendant that it should not be included among those which make up the "earnings" from which Meleny's additional compensation is to be paid.

Besides a contention that the profits on the lease should not be included because the "earnings" of the Library Bureau meant, in the light of the evidence, "net *trading* profits" or "net *trading* earnings," which would properly exclude the "gain on the lease," it is insisted that the lease belonged to the Library Bureau of New Jersey (another corporation), and any "gains" from it had no place in the profit account of the Library Bureau of Illinois.

As to the second item—"Fire Loss Account, $818.97" —the appellee says in his argument: "The evidence as to the 'Fire Loss' item was confusing; the amount involved was only $204.74, or 25 per cent of $818.97, and before the case went to the jury the appellee waived this item." But this concession does not satisfy appellant, who contends that the evidence not only does not show a gain of $818.97 on this account, but does show a loss of $2,332.15, one-fourth of which, or $583.04, should be deducted from the amount allowed by the jury to the appellee.

The third item disputed is on the debit side—"Loss on Public Libraries, $2,109.67." For the purpose of calculating the amount due to the plaintiff, this amount should be doubled, says the defendant, because the loss of the Library Bureau of Illinois on the magazine "Public Libraries" was really $4,219.34, one-half of which, by way of donation, the Library Bureau of New Jersey made up to the Library Bureau of Illinois.

The appellee resists this contention by the proposition that the "Loss on Public Libraries" really repre-

sented advertising expense, borne primarily by the Library Bureau of Illinois, but refunded to the extent of one-half by the Library Bureau of New Jersey, whose business purposes it equally subserved. The payment of $2,109.67 by the latter corporation therefore was no donation, but a payment lessening the "expense" or "loss" by that amount, and legitimately reducing it to the amount in which it appeared in the Auditor's account.

This view, it is contended by appellee, is borne out, among other ways, by the fact that the evidence shows that another employe of the Library Bureau of Illinois, named Burrage, who had a contract for additional compensation in almost every respect identical with Meleny's, was allowed the benefit of this payment.

The appellant admits and claims an agreement or settlement which took no account of the item of $583.04, which it says should justly be deducted from Meleny's claim on account of "Fire Loss," but insists that on account of the "Wabash Avenue Lease" matter there should be deducted one-quarter of $6,323.39, or $1,580.85, and on the Public Libraries matter one-quarter of $2,109.67, or $527.41, making together $2,108.26. This item taken from $2,350.23 leaves $241.97, which sum the appellant says in its opinion is the amount for which a verdict and judgment should have been rendered.

Although we have thus, at some length, stated the contention of the respective parties, we do not propose to discuss the weight of the evidence on them. We might be content to leave the verdict of the jury undisturbed, if a very serious admitted error had not been committed in instructing the jury.

The fourth instruction given at the request of the appellee was this:

"If the jury believe from the evidence that the defendant had an agreement with one or more persons other than the plaintiff, by which such person or persons was or were entitled to a percentage of the profits

of the business of the defendant for a certain year or years, and if they further believe from the evidence that in determining the amount of profits upon which such person or persons would be entitled to a percentage, the defendant admitted that the profits for the year 1905, growing out of the so-called Wabash Avenue lease, were a part of the profits for that year, upon which such person or persons were entitled to a percentage, then the jury are instructed that such admission, if any, is evidence to be considered by them in this case in determining whether the plaintiff is entitled to his percentage on such profits, if any.''

The appellant claims that giving this instruction was error, because there is no evidence in the record of any such admission by appellant, nor evidence from which any inference can be drawn that such an admission was made.

The tendering and giving of the instruction seems to have been the result of a misapprehension and the confusion of the ''Public Libraries'' matter with the ''Wabash Avenue Lease'' matter.

The appellee does not deny that giving the instruction was error, but argues that it should not result in reversal.

He quotes from Bettis v. Green, 171 Ill. 495, the language: ''It is well settled that to authorize a reversal of a decree, it must appear not only that an error intervened, but the record must contain enough to raise and justify the inference that the error was prejudicial or probably prejudicial to the party who asks reversal.''

The argument of appellee then proceeds: ''The only result unfavorable to the appellant to which this instruction might have contributed, was the finding by the jury that the profits of the Wabash Avenue Lease were a part of the appellant's earnings for the year 1905. We have labored fruitlessly if the Court is not convinced upon the whole evidence, that such was the fact, and that with or without this instruction, the jury could not have found otherwise. *A finding to the contrary would not be allowed to stand.''*

Perhaps if we could yield our assent to the conclud-ing sentence of this paragraph of the appellee's argu-ment, we could bring the admitted error within that class of errors which alone the Supreme Court in a much later case than Bettis v. Green says are harm-less, not requiring reversal.

In Crane v. Hogan, 228 Ill. 340, the Supreme Court says: "A judgment will not be reversed unless error is affirmatively made to appear, but whenever error is shown to exist it will compel a reversal unless the rec-ord affirmatively shows that the error was not preju-dicial."

But even if we follow what seems to us the less dras-tic rule laid down in the earlier case, and require some-thing in the record justifying the inference that the error was prejudicial, to prevent affirming, rather than something which shall "affirmatively show" that it was not prejudicial, to prevent reversing, we cannot, in this case, overlook this admitted error. The principal matter left to the jury was this very item of the alleged gains on the Wabash Avenue lease. The instruction was very likely, under the circumstances, to mislead the jury at least into believing that the court had heard and remembered testimony during the trial which they had forgotten; and altogether we can neither say that "a finding to the contrary would not have been allowed to stand," nor that there is not enough in the record "to raise and justify the inference" that the error was "probably prejudicial" to the party who asks reversal. At all events we certainly cannot say that "the record affirmatively shows that the error was not prejudicial."

For the error indicated we must reverse the judg-ment and remand the cause for a new trial.

We do not think that the other instructions com-plained of were erroneous, nor do we express any opinion on the weight of the evidence.

The judgment of the Municipal Court of Chicago is reversed and the cause remanded to that court.

*Reversed and remanded.*